UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

           Plaintiff,

vs.

Nineteen Thousand Three Hundred
Fifteen Dollars and Eighteen Cents
($19,315.18) in U.S. Currency
from Bank of America Account
Number: 237033591854

           Defendant *In Rem*.

           Civil No.

           Honorable:
           Magistrate Judge:

**DEMAND FOR JURY TRIAL**

_____/

**COMPLAINT FOR FORFEITURE**

NOW COMES Plaintiff, the United States of America, by and through Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Philip A. Ross, Assistant United States Attorney, and states upon information and belief as follows in support of this Complaint for Forfeiture:

1. This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C).

2. This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

3. This Court has jurisdiction over this forfeiture action, pursuant to 28 U.S.C. § 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the Government's claims occurred in the Eastern District of Michigan.

5. Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(b) as the defendant *in rem* was found and seized in the Eastern District of Michigan.

## DEFENDANT *IN REM*

6. The defendant *in rem* consist of the following: Nineteen Thousand Three Hundred Fifteen Dollars and Eighteen Cents ($19,315.18) in U.S. Currency from Bank of America Account Number: 237033591854 held in the name of E.L. Mann, Inc. (The above described defendant *in rem* shall hereinafter be referred to as "defendant currency"). Seizure warrants were executed by agents with the United States Federal Bureau of Investigation ("FBI") on or around November 15, 2017. Subsequent to the seizure of the defendant currency, custody of the defendant currency was transferred to the United States Marshal's Service ("USMS") and deposited into an account maintained by the USMS.

## STATUTORY BASIS FOR CIVIL FORFEITURE

7. <u>Health Care Fraud</u>: Title 18, United States Code, Section 1347:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice –
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
> (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

8. Attempt and <u>Conspiracy</u>: Title 18, United States Code, Section 1349 provides:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

9. <u>Offer, acceptance, or soliciting to influence operations of employee benefit plan</u>: Title 18, United States Code, Section 1954:

> Whoever being--
> (1) an administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan or employee pension benefit plan; or
> (2) an officer, counsel, agent, or employee of an employer or an employer any of whose employees are covered by such plan; or

3

> (3) an officer, counsel, agent, or employee of an employee organization any of whose members are covered by such plan; or
> (4) a person who, or an officer, counsel, agent, or employee of an organization which, provides benefit plan services to such plan

receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to any question or matter concerning such plan…

10. <u>Health Care Fraud Proceed Forfeiture</u>: Title 18, United States Code, Section 981(a)(1)(C), provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," which includes health care fraud or conspiracy to commit such an offense.

11. <u>Civil Forfeiture of Fungible Property</u>: Title 18, United States Code, Section 984, provides:

> (a)(1) In any forfeiture action *in rem* in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution…
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for forfeiture; and
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

## FACTUAL BASIS IN SUPPORT OF FORFEITURE

12. The defendant currency is forfeitable to the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(C). Evidence supporting this determination includes, but is not limited to, the following:

a. The seizure of the defendant currency arose from an investigation that started with Blue Cross Blue Shield of Michigan ("BCBSM") around 2010 through 2016 into a health care fraud scheme involving various healthcare-related companies. An investigation revealed that William Robinson (hereinafter "Robinson") was defrauding multiple insurance providers, including public and private union healthcare funds, by submitting false claims for hearing devices and services that were medically unnecessary and/or never rendered. BCBSM's internal investigation also revealed that Robinson was not securing proper medical clearance or evaluations prior to dispensing and billing for hearing aids. Since approximately 2000 there have been 42 complaints made to the BCBSM anti-fraud hotline regarding Robinson and companies associated with Robinson. Victims include members of FCA US, LLC, State of Michigan, Michigan Public School Employee Retiree Plan, UAW Retiree Medical Benefit Trust, and Medicare.

b. In order to receive reimbursement from BCBSM, a provider must submit a claim, either electronically or using a form, containing the required information appropriately identifying the provider, beneficiary, and services

5

rendered, among other things. The provider can elect to receive reimbursement via electronic funds transfer (EFT) or by check.

    c.     Investigators are aware that during the time frame of 2010 through 2016, Robinson has been involved in the business operation of multiple different businesses. Through the timeframe of this investigation the businesses have changed names and there have been multiple owners of the below mentioned businesses. However, all named "owners" are close family members of Robinson. These businesses include:

- Hear Here Corporation, owned by Edrea Lorraine Mann (Robinson's daughter);

- William A. Robinson, Inc., owned by Robinson;

- Robinson Hearing Centers, LLC, owned by Aaron Robinson (Robinson's son);

- Quality Hearing Center, Inc., owned by Tamara Sulik (Robinson's step-daughter);

- Robinson Hearing Aid Services, LLC, owned by Glenda Robinson (Robinson's wife).

    d.     According to the website of the Department of Licensing and Regulatory Affairs (LARA) for the State of Michigan, Robinson obtained a license as a hearing aid dealer in the state of Michigan. Robinson's hearing aid dealer

6

license was set to expire on November 30, 2017. According to the LARA website, Robinson's listed business address is listed on E. 10 Mile Rd, in Centerline, Michigan.

    e.    On December 6, 2010, Robinson provided BCBSM a BCBSM Medicare Advantage PPO Provider Agreement and Practitioner Attachment on behalf of William A. Robinson, Inc. Robinson signed the certification, on behalf of the business, indicating that he agreed, to be legally bound by the terms and conditions of the agreement. Robinson notated that he was a hearing aid dealer on the Practitioner Attachment. By signing this certification, Robinson agreed that he would not knowingly present or cause to be presented a false or fraudulent claim for payment to Medicare or BCBSM, and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

    f.    All of the companies associated with Robinson as listed above in paragraph "c" were required to complete a Hearing Specialist Participation Agreement with BCBSM. The Group Enrollment forms for the agreements included the signatures of William A. Robinson, Aaron Robinson, Glenda Robinson, and Tamara Sulik. Edrea (Robinson) Mann signed as a Point of Contact for William A. Robinson, Inc.

    g.    Investigators interviewed multiple complainants during the course of the investigation. During an interview with BCBSM investigators, an individual,

(age 77 at the time of interview) acknowledged that Robinson came to her home on January 7, 2014 and conducted a hearing examination. Later, she stated that Robinson telephoned her and advised that her hearing aids were ready. She stated that she declined his offer of hearing aids and never received hearing aids from Robinson. She further claimed she did not sign a contract to allow billing for hearing aids. Neither this individual, nor her spouse who was also home at the time of the visit by Robinson, received conformity evaluations because they never received hearing aids. A "conformity evaluation" is a procedure that occurs during a follow-up visit to the physician specialist, audiologist or hearing aid specialist or dealer who prescribed the hearing aid to verify that the patient received the prescribed hearing aid and to evaluate its effectiveness. Hearing aid providers may bill insurance providers for conducting conformity examinations. On January 7, 2014, claims describing Robinson as the provider (the person conducting the exam) and hearing aid services rendered at the Centerline location were submitted to Blue Care Network (BCN) for the members referenced above. William A. Robinson, Inc. sought reimbursement for in-the-ear hearing aids, audiometric testing, hearing aid assessment and conformity evaluations. BCN is a nonprofit health maintenance organization owned by BCBSM. BCN paid $1,222 for each claim.

8

h.      In another, yet similar instance, a FBI agent and a BCBSM investigator met with another individual to discuss claims for hearing aids billed to BCBSM in 2015. This person stated he had never received hearing aids, and also denied ever meeting Robinson or anyone affiliated with Robinson or the Robinson Companies. On November 17, 2015, claims were submitted to BCBSM. The claim was submitted without a provider-of-services listed. William A. Robinson, Inc., located in Centerline, sought reimbursement for audiometry for hearing aid evaluation, an assessment for hearing aid, conformity evaluation, and binaural in-the-ear hearing aids. BCBSM paid $2,138.80 for that claim. This individual stated he was not aware of a claim for hearing aids, and denied allowing anyone to bill his insurance for hearing aids or hearing assessments.

i.      In another instance, during an interview with investigators on October 25, 2017, an individual confirmed that he went to the Hear Here location in Taylor, MI around December 20, 2016. This person also stated he had been to that location previously and received hearing aids in 2010 and 2013. In 2016, he believed that the female who tested his hearing was the owner, and that this female had a husband who worked at the location. Investigators believe this observation suggests that the subject who did the hearing test was Tamara Sulik. A claim was paid, listing an audiologist named Jennifer Rowe as the provider who rendered the hearing test. However, in a separate interview conducted by an FBI agent and a

9

BCBSM Investigator on October 11, 2017, Jennifer Rowe confirmed she was no longer employed at Hear Here on the date of service indicated on the claim. On December 20, 2016, Hear Here sought reimbursement for an audiometry for hearing aid evaluation, and assessment for hearing aid. BCBSM paid $126.26 for that claim. Also, a claim was paid on November 18, 2013 for binaural in-the-ear hearing aids, instead the individual interviewed received behind-the-ear hearing aids indicating the 2013 claim was falsely submitted also.

    j.    Data received from BCBSM in, or around, the end of 2016 showed that between the years 2010 through the first half of 2016, services amounting to an approximate total of $7,911,546 were billed to BCBSM by providers affiliated with Robinson and described in Paragraph "c" for services which were purportedly performed by Robinson or individuals affiliated with Robinson and the companies described in Paragraph "c". For these billings, the companies received approximately $5,185,393.06 from BCBSM.

    k.    Between 2010 and 2016, an investigation has confirmed at least sixteen instances in which the companies associated with Robinson, described in Paragraph "c", billed BCBSM for hearing aids that were never delivered to claimants, and at least seventeen instances in which companies associated with Robinson billed BCBSM for in-the-ear hearing aids, while claimants received behind-the-ear hearing aids. In-the-ear hearing aids are more expensive than

10

behind-the-ear hearing aids. The difference in the allowable amount of the claim paid for in-the-ear hearing aids, and the behind-the-ear hearing aids received by claimants is approximately $128. And between 2010 and 2016, this investigation has confirmed at least fourteen instances in which companies associated with Robinson billed BCBSM for binaural hearing aids, while the claimants received a single monaural hearing aid. The filing of the false claim would benefit the companies as the cost of binaural hearing aids are more expensive than the cost of a single monaural hearing aid.

l. Since 2000, at least 30 complaints have been filed with BCBSM Corporate and Financial Investigations division complaining about hearing aids that were billed to BCBSM, but were not received by the member. Because of member complaints, BCBSM periodically sent letters to ROBINSON advising him to follow the guidelines in the BCBSM manual. BCBSM records show that Robinson received such letters at least six times.

m. As part of the investigation, financial records were obtained and reviewed between the years 2010 through the first half of 2016. As described within this complaint, services amounting to an approximate total of $7,911,546 were billed to BCBSM by providers affiliated with Robinson and for services which were purportedly performed by Robinson or individuals affiliated with Robinson and the companies described in paragraph "c". For these billings, the

various companies described received approximately $5,185,393.06 from BCBSM. Information for Bank of America Account number, 237033591854 ("BOA #1854") (the account that the defendant currency was seized from), shows the current account is held in the name of E.L. Mann Inc., and received fraudulent deposit activity during the investigative period referenced above, while being controlled by Robinson and or his daughter, Edrea Mann.

    n.    From February 16, 2016 through August 31, 2017, BOA #1854 held in the name of E.L. Mann, Inc., received payments from BCBSM and several other private insurance companies contracting for healthcare related services in the form of electronic transfers totaling $535,714.39. Although the bank account remains in the name of the former business of E.L. Mann, the account received the direct deposits stated above for purported services provided and billed under the Hear Here Corporation now purportedly under the ownership of Robinson's daughter, Edrea Mann.

    o.    Investigators also noted numerous cash withdrawals (via ATM and in person at a branch) for bank accounts owned or controlled by Robinson, including BOA #1854. Between April 2015 through August 2017, investigators identified 391 cash withdrawals totaling $526,198.84. A breakdown of these transactions is detailed below:

| Account | Time Frame | Number of Withdrawals | Total Amount |
|---|---|---|---|
| Robinson Hearing Center, BOA #7721 | 4/15-4/17 | 300 | $426,954.00 |
| EL Mann, Inc., BOA #1854 | 2/16-8/17 | 91 | $99,244.84 |
| | **Totals:** | 391 | $526,198.84 |

p.  Given the facts obtained during the investigation, there is probable cause to believe that a significant portion of the funds in BOA #1854, if not all, constitutes proceeds of William A. Robinson's and co-conspirators' illegal scheme to defraud BCBSM and other healthcare providers by billing for services that were not rendered or unnecessary, and are traceable to the proceeds of illegal activity.

## **CLAIM**

13.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 12, and the subparagraphs thereunder.

14.  The defendant currency is forfeitable to the United States of America as proceeds of illegal activity and/or are traceable to the proceeds of illegal activity, specifically Health Care Fraud, in violation of Title 18 U.S.C. § 1347, Attempt and Conspiracy, in violation of 18 U.S.C. § 1349, and Title 18 U.S.C. § 1954 Soliciting Kickbacks and fees. As such, the funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(C).

## CONCLUSION AND RELIEF

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the defendant currency be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the defendant currency to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Respectfully submitted,

Matthew Schneider
United States Attorney


s/PHILIP A. ROSS
PHILIP A. ROSS
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9790
philip.ross@usdoj.gov
(VA State Bar #70269)

Dated: April 26, 2018

## VERIFICATION

I, Lyza Bellinger, state that I am a Special Agent with the United States Federal Bureau of Investigation ("FBI"). I have read the foregoing Complaint for Forfeiture, and declare under penalty of perjury that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

_____
Lyza Bellinger, Special Agent
Federal Bureau of Investigation

Dated: April 26, 2018